FILED

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**     JUN 0 1 2026

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

JAMIE OSUNA (CDCR No. BD0868)
CSP-COR PO Box 8800
Corcoran, CA 93212,
                    Plaintiff,
          v.
HECTOR FERREL; CHRISTINA
FERREL, JOHN DOES 1–50,

                    Defendants..

No.

1:26 mc 00058 SAB

**MOTION FOR DETERMINATION THAT CDCR E-FILING STANDING ORDER DOES NOT APPLY AND REQUEST TO ACCEPT CONVENTIONAL PAPER FILING**

Plaintiff Jamie Osuna, proceeding pro se, respectfully moves for an order directing the Clerk to accept and file, or alternatively lodge pending judicial review, Plaintiff's complaint and initiating papers by conventional paper filing and not reject them solely because they were not submitted through the CDCR e-filing pilot program.

Good cause exists because the Standing Order attached as Exhibit A is limited by its own terms. The Order establishes a pilot program for certain prisoner filings involving conditions-of-confinement claims. The Order expressly states that it applies only to cases involving conditions-of-confinement claims and does not apply to matters not authorized by the Order.

This case is not a conditions-of-confinement action. The Complaint and Civil Cover Sheet identify this matter as a general civil-rights action under 42 U.S.C. § 1983, Nature of Suit Code 550, rather than a Prison Condition action under Code 555 or a Civil Detainee Conditions-of-Confinement action under Code 560. The Complaint alleges First Amendment retaliation, conspiracy and joint action under 42 U.S.C. § 1983, and related equitable relief arising from the alleged unauthorized acquisition, disclosure, publication, and monetization of Plaintiff's information and materials. The action does not challenge Plaintiff's housing, medical care, disciplinary conditions, use of force, or other conditions of confinement.

The Local Rules likewise contemplate paper filing by pro se litigants. Local Rule 133 provides that pro se parties file and serve paper documents unless authorized to participate in

1

CM/ECF. Nothing in the Standing Order appears to require mandatory CDCR e-filing for a non-conditions-of-confinement civil action solely because the plaintiff is incarcerated.

Plaintiff has attempted to submit this action through available institutional channels but has been unable to obtain filing through those channels. Requiring Plaintiff to proceed exclusively through a procedure that, by its own terms, appears limited to conditions-of-confinement actions risks unnecessary delay and potential prejudice to Plaintiff's ability to timely commence this action.

Accordingly, Plaintiff respectfully requests that the Court:

1. Determine that the CDCR e-filing Standing Order does not apply to this action;

2. Direct the Clerk to accept and file Plaintiff's complaint and accompanying initiating documents through conventional paper filing; or

3. Alternatively, direct that the documents be lodged and referred to the assigned judicial officer for determination rather than rejected based solely on the absence of CDCR e-filing.

Dated: May 28, 2026

Respectfully submitted,

p.p. Jamie Osuna

**FILED**

**March 1, 2016**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

IN RE: PROCEDURAL RULES FOR ELECTRONIC SUBMISSION OF PRISONER LITIGATION FILED BY PLAINTIFFS INCARCERATED AT PARTICIPATING PENAL INSTITUTIONS

**STANDING ORDER**

This Standing Order for the United States District Court for the Eastern District of California, describes a pilot program in which the Court and the California Department of Corrections and Rehabilitation (CDCR) whereby initial pleadings submitted by prisoners in civil rights cases involving conditions of confinement claims will be electronically filed. As part of this pilot program, CDCR agrees to collaborate with the Court to obtain and maintain participating penal institutions under the program. Participating penal institutions shall be those institutions which CDCR and the Court agree shall participate in the program. This pilot program is designed to reduce the cost of processing court filings in civil rights cases brought by incarcerated Plaintiffs pursuant to 42 U.S.C. § 1983.

As part of the pilot program, the following guidelines apply:

**Scope:**

1.     This Standing Order only applies to cases brought by incarcerated plaintiffs housed at one of the participating facilities at the time of initial filing, regarding claims

1

involving conditions of confinement, such as those brought under 42 U.S.C. § 1983. This Standing Order does not apply to claims challenging the fact or duration of a prisoner's confinement, or other matters not herein authorized.

2.    Further, this Standing Order only applies to initial filings by Plaintiffs, defined as the complaint, an application to proceed in forma pauperis without prepayment of fees, a motion seeking relief from this Standing Order, and/or a motion for emergency relief.  At a CDCR participating facility, no initial documents will be accepted for filing by the Clerk of the Court unless they comply with this Standing Order, or the scanning equipment is inoperable for more than forty-eight (48) hours.  After the initial filings, all other filings shall be mailed and shall comply with the Local Rules for the United States District Court for the Eastern District of California, and any subsequent orders issued by this Court.

**Procedures for E-Filing:**

3.    Plaintiffs shall provide their complaint and any application to proceed in forma pauperis without prepayment of fees to CDCR in conformity with CDCR's procedures for the electronic filing of initial documents, including any applicable procedures for paying for photocopies.  Plaintiffs are required to pay for photocopies according to the applicable CDCR policies and procedures.

4.    To facilitate compliance with Federal Rule of Civil Procedure 8(a)(2) (requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief") and to reduce costs and delays associated with processing complaints, the Court imposes a page-limit on complaints filed by incarcerated Plaintiffs.  Complaints shall not exceed twenty-five (25) pages in length. Any exhibits attached to a complaint shall count toward the twenty-five page limit. Plaintiffs are encouraged to use the Court's sample civil rights form.  In the event a Plaintiff needs to file a complaint longer than twenty-five (25) pages, he or she must submit a motion demonstrating the grounds for the need to exceed the page limitation, along with the proposed complaint, to the Court for permission to exceed the page limit.

2

Motions to proceed in forma pauperis, motions to increase the page limit, and motions for emergency relief shall be no more than fifteen (15) pages in total combined length.

5.    CDCR staff will scan all initial filings into a preprogrammed digital sender which scans and converts the documents to .PDF format.  On the front page of each separate filing, CDCR staff shall stamp the document indicating that the document has been scanned and emailed, along with the date completed.  After the documents are scanned, the original documents will be returned to the Plaintiff and CDCR shall promptly email the documents to the Clerk of Court for filing.

6.    The Court, through the Clerk of the Court, will retrieve the e-mailed documents from CDCR, conduct a readability review, and file them in the Case Management Electronic Case Filing system (CM/ECF).  The Court will e-mail a document confirming receipt of the filed documents, initial case filing instructions and any orders or other documents provided at initial filing to the plaintiff at an e-mail address established by CDCR.  CDCR staff shall deliver these e-mailed documents to the incarcerated plaintiff.  After this initial filing, all other documents to be filed shall be sent and served through the mail in accordance with CDCR procedures regarding legal mail, the Local Rules of this Court, and other applicable law.

7.    Each CDCR facility participating in the pilot program will establish an e-mail address at which CDCR staff can retrieve the Court's emails and other court-issued initial filings.  CDCR staff will retrieve this information and any attached documents, from the Court's email and print and deliver them to the incarcerated plaintiff.  If the incarcerated plaintiff refuses delivery of the documents, or is no longer incarcerated at an e-filing CDCR participating facility, CDCR staff will notify the Court by e-mail and indicate the reason for non-delivery of the documents.  Because the original civil complaint and other filings will be returned to the incarcerated plaintiff as after being scanned and emailed, the Court and CDCR are not required to provide the incarcerated plaintiff with any filed stamped copies of the documents filed by the plaintiff.

///

8.    The Clerk of Court is authorized to create any additional required forms or procedures to effectuate this Standing Order.

9.    Issues regarding access to the e-filing program shall be referred to a designated magistrate judge for determination and authorization to open a miscellaneous proceeding prior to accepting the civil complaint should the magistrate judge, in his or her discretion, deem it necessary.  For filings in the Sacramento Division, Magistrate Judge Carolyn K. Delaney shall be the designated magistrate judge.  For filings in the Fresno Division, Magistrate Judge Stanley A. Boone shall be the designated magistrate judge.

10.    The effective date of this Standing Order is March 1, 2016.

Dated:  February 24, 2016

MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

4

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Jamie Osuna BD0868

**DEFENDANTS**

Hector Ferrel; Christina Ferrel; Does 1-50

**(b)** County of Residence of First Listed Plaintiff   Kings
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   San Diego
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

RECEIVED

JUN 0 1 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Plaintiff Pro Se CSP-COR, P.O. Box 8800 Corcoran, CA 93212

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☒ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
First Amendment retaliation; § 1983 conspiracy; supplemental UVTA and equitable relief

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   $25,000,000+

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   May 26, 2026

SIGNATURE OF ATTORNEY OF RECORD
p.p. *Jamie Osuna*

**FOR OFFICE USE ONLY**

RECEIPT #   _____   AMOUNT   _____   APPLYING IFP   _____   JUDGE   _____   MAG. JUDGE   _____

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE OSUNA (CDCR No. BD0868) CSP-COR PO Box 8800 Corcoran, CA 93212, Plaintiff, v. HECTOR FERREL; CHRISTINA FERREL, JOHN DOES 1–50, Defendants. | No. **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983) AND SUPPLEMENTAL EQUITABLE RELIEF** 1. First Amendment Retaliation Joint Action with State Actors 2. 42 U.S.C. § 1983 Conspiracy Joint Action Under Color of State Law 3. Supplemental Equitable Asset Preservation, Constructive Trust, Disgorgement, and Voidable-Transfer Relief **DEMAND FOR JURY TRIAL** |

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under 42 U.S.C. § 1983 and the United States Constitution. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over related equitable, asset-tracing, constructive-trust, disgorgement, and voidable-transfer claims arising from the same alleged publications, proceeds, monetization, and transfers.

2. Venue is proper in the Eastern District of California because a substantial part of the claims arises from statewide CDCR/CCHCS systems, Sacramento-area or headquarters access pathways, DOE state-actor activity using those pathways, post-notice breach-response and file-security decisions, ratification or nonintervention, and refusals to refer, preserve, audit, or mitigate after notice.

## II. INTRODUCTION

3. Plaintiff is the defendant in Kings County Superior Court case no. 19CM-1882, a pending pretrial felony matter arising during Plaintiff's incarceration at CSP-Corcoran.

4. Because 19CM-1882 occurred inside CSP-Corcoran, CDCR investigative and related staff were responsible for collecting, storing, safeguarding, limiting access to, and preserving photographs, investigative materials, and related records created during and after the investigation.

1

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

5. Plaintiff engaged in protected First Amendment activity, including filing grievances and petitions, pursuing civil-rights litigation, submitting court filings, attempting service, and sending legal communications concerning unauthorized disclosures, confidentiality, legal access, and custodial safety.

6. Defendant Hector FERREL is a former CDCR lieutenant and public-information officer who operates prison-focused media platforms, accounts, brands, websites, and paid channels.

7. This action is not based on FERREL's opinions, criticism, commentary, or use of lawfully obtained public information.

8. For purposes of this Complaint, "Plaintiff Materials" means Plaintiff-specific, nonpublic CDCR/CCHCS-derived records, information, photographs, footage, reports, grievance or legal-service materials, custody or classification information, medical or mental-health information, investigative materials, and case-related materials allegedly obtained, disclosed, supplied, transmitted, published, promoted, sold, monetized, or used through official-access pathways.

9. "Challenged Conduct" means obtaining, soliciting, accessing, transmitting, facilitating access to, concealing, disclosing, publishing, promoting, selling, distributing, licensing, monetizing, retaining, or otherwise using Plaintiff Materials outside authorized channels.

10. Plaintiff alleges FERREL and one or more DOE state actors engaged in Challenged Conduct involving Plaintiff Materials obtained through official-access pathways.

11. Plaintiff alleges FERREL did not act solely as a private commentator. He allegedly solicited official-access materials, invoked institutional or headquarters sources, promised source protection, used evasive communications, and published or monetized materials unavailable through ordinary public channels.

12. Plaintiff alleges one or more DOE state actors supplied, transmitted, facilitated access to, concealed, or after notice allowed continued dissemination of Plaintiff Materials through grievances, captures, links, legal filings, service materials, and related proceedings.

13. Plaintiff alleges the disclosures and publications occurred near Plaintiff's protected activity and critical court events alleged below.

14. Plaintiff alleges FERREL obtained content, audience growth, subscribers, revenue, and brand

2

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

value through the Challenged Conduct, while CDCR-affiliated actors used or allowed his platforms to circulate Plaintiff Materials and inflammatory narratives after notice. Plaintiff further alleges a similar pattern in other inmates' cases, as outlined in Exhibit B.

15. Plaintiff does not sue any state-actor Defendant based only on supervisory title, employment rank, or grievance denial. As to DOE state actors, Plaintiff sues each post-notice Defendant for that Defendant's own acts or omissions, including personally reviewing, receiving, assessing, or hearing Plaintiff's materials and threat information; making, approving, adopting, or issuing determinations; and refusing or blocking available referral, documentation, preservation, mitigation, file-security, safety-review, or investigative action after actual notice.

16. Plaintiff alleges resulting physical and emotional distress, confidentiality harms, reputational harm, custodial-safety and deterrence harms, legal-access interference, and ongoing risk absent preservation, audit, takedown, and prospective relief.

17. Plaintiff names CHRISTINA FERREL and DOES 26–50 only as relief defendants for the equitable relief described below.

### III. PARTIES

18. Plaintiff Jamie Osuna is incarcerated in CDCR custody.

19. Defendant Hector FERREL is a former CDCR lieutenant and public-information officer who now operates prison-focused media platforms.

20. Defendant CHRISTINA FERREL is a Chula Vista, California resident and is named only as a relief defendant.

21. Defendant DOES 1–25 are unidentified CDCR/CCHCS employees, agents, contractors, or other persons who acted under color of state law or jointly with state actors. Plaintiff alleges they accessed, copied, downloaded, printed, photographed, transmitted, facilitated, ratified, concealed, failed to safeguard, or selectively refused to stop dissemination of Plaintiff Materials. Plaintiff will amend when their identities are discovered.

22. Defendant DOES 26–50 are unidentified relief defendants, including transferees, nominees, trustees, custodians, account holders, entities, insiders, family-member asset holders, or other persons who may have received, held, controlled, benefited from, been assigned, or may later

3

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

receive, hold, control, benefit from, or be assigned assets, proceeds, revenues, accounts, trusts, custodial accounts, minor-beneficiary accounts, property interests, or substitutes traceable to the Challenged Conduct or subject to voidable-transfer relief. They are named solely for equitable relief, including tracing, accounting, disgorgement, constructive trust, equitable lien, asset preservation, avoidance, injunction, receivership if necessary, and recovery of such assets in their possession, custody, or control.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

23. Plaintiff timely pursued and exhausted available CDCR administrative remedies, including grievance log nos. 612544, 613992, and 632941, as alleged misconduct became known to him.

24. CDCR denied or declined relief on grounds including FERREL's post-employment/civilian status, free-speech concerns, asserted lack of jurisdiction, unavailable relief, or duplication. CDCR also combined or rerouted unrelated matters into single or existing grievances during screening, classification, or processing.

## V. FACTUAL ALLEGATIONS [1]

### A. Protected Activity and Confidentiality Interests

25. Plaintiff's pending criminal matter, Kings County Superior Court case no. 19CM-1882, includes discovery, investigative photographs, medical and mental-health context, internal investigative materials, and other materials not intended for public dissemination. Some materials are sealed, confidential, restricted by protective order, or otherwise treated as sensitive in the criminal proceedings. The prosecution has also taken the position that possession of certain photographs creates institutional-security concerns.

26. Plaintiff has a documented mental-health and competency context relevant to pretrial proceedings. Plaintiff alleges that, in custody, public dissemination of stigmatizing medical, mental-health, classification, or record-derived information foreseeably increases the risk of harassment, threats, and violence.

27. Plaintiff's protected activity included grievances, civil-rights litigation, court motions, petitions,

---

[1] **See Exhibit A** for paragraph-specific mapping of statements, URLs, transcripts, dates, screenshots/captures, and platform entries supporting the factual allegations in this section.

4

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

service papers, and complaints concerning those issues.

28. Plaintiff's filings and complaints in 19CM-1882 and related proceedings challenged conduct by officers, prosecutorial or investigative actors, and institutional personnel, including issues concerning confidentiality, restricted materials, disclosure practices, related custodial conduct.

29. Plaintiff did not authorize FERREL, any DOE Defendant, or any CDCR/CCHCS employee, agent, or source to receive, retain, possess, disclose, publish, sell, promote, or monetize Plaintiff Materials. FERREL's resignation, former employment, pension status, criticism, or prison commentary did not convert those materials into public information or make him a state actor by itself. Plaintiff alleges FERREL's former rank, public-information experience, prior file access, Title 15 and DOM statements, body-worn-camera statements, and HIPAA/confidentiality statements for knowledge, source-access, absence-of-mistake purposes.

**B. CDCR Restrictions, Notice, and Controlled Materials**

30. Following heightened public interest in case no. 19CM-1882, CDCR implemented enhanced restrictions on Plaintiff's C-file, limiting access to management-level personnel and requiring logging of staff identity and access purpose.

31. Plaintiff received CDCR breach notifications concerning unauthorized online disclosure of Plaintiff's dental records and, separately, Plaintiff's photograph and housing information, and was informed that the material had been removed from online. CDCR also granted Plaintiff's grievance concerning a CDCR officer's stigmatizing post to FERREL's video about Plaintiff, and that post was removed from online.

32. Plaintiff alleges CDCR did not provide comparable breach notifications, removal efforts, restored enhanced access restrictions, audit results, or breach response concerning later dissemination of Plaintiff-specific 19CM-1882 investigative material, grievance, classification, medical, mental-health, legal-mail, service, or case-related materials promoted or disseminated through FERREL's platforms.

33. During the grievance/complaint process, Plaintiff notified CDCR of alleged disclosures and identified statutes, regulations, and policies governing inmate records, protected health information, institutional footage, BWC/AVSS footage, employee and post-employment

5

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

confidentiality duties, unauthorized disclosure, and use of confidential information for personal gain. Plaintiff alleged the materials were not obtained from ordinary public court records, press releases, authorized CDCR releases, or authorized public-records procedures because of their content, timing, presentation, internal identifiers, restricted context, grievance-specific details, recurring inmate-record details, and paywall framing.

## C. FERREL's CDCR Background and Confidentiality Knowledge

34. FERREL publicly described broad prior access to inmate files and confidential records while employed by CDCR, including statements that he read inmate files, confidentials, SHU or "heavy hitter" C-files, and Plaintiff's file "numerous times," including files of inmates housed at institutions where FERREL had not worked.

35. FERREL stated that he served as a public-information officer and described the outward-facing PIO role of standing before cameras and announcing incident information. He also stated that the PIO role gave direct or personal links to OIA, OIG, and others.

36. FERREL publicly stated that HIPAA means "your medical files are supposed to be... confidential to the world"; that officials could not disclose whether an inmate had diseases "even though it's in [the] file... because of HIPAA"; and that he would be "violating HIPAA" if he disclosed why an inmate was at a hospital.

37. FERREL publicly referred to Title 15 and the DOM as operative CDCR rulebooks, including § 3391, urged staff to learn them when discussing security, documentation, operational conduct.

38. In FERREL's own civil complaint against CDCR, filed in San Diego Superior Court, he alleged that in May 2021 he refused to review an officer's body-worn camera to "look for" policy violations because he believed "spying on body worn cameras without just cause" was illegal.

39. In an Instagram reel concerning his CDCR resignation, FERREL stated: "I planned this shit like a year out. I planned this whole exit strategy." He also described himself as playing "chess" while CDCR played "checkers."

40. FERREL posted: "For some reason CDCR thinks they're special and they don't have to release body worn camera footage, like every other LE agency in the USA."

41. FERREL has been presented in interviews or media as a CDCR "whistleblower" and has used

6

"blowing the whistle" language in interviews or social media. In a livestream, FERREL stated: "I never did consider myself a whistleblower, but in order to protect myself from retaliation through the whistleblower act, oh yeah, I'm a whistleblower."

**D. Media Platforms, Monetization, and Official-Access Material**

42. After resigning from CDCR, FERREL used public and paid platforms to publish prison-incident content, officer and inmate commentary, and materials presented as insider, source-based, or record-based, including CDCR 7219 medical forms, AVSS/BWC footage, internal emails, reports, attack or homicide footage, OIA interviews, and case materials for pending felony cases and civil litigation.

43. Plaintiff alleges many of those materials bore department recording markings, official emails, internal identifiers, or other official markers indicating they were department-created, department-maintained, or official-access materials rather than ordinary public-source content.

44. FERREL promoted fuller, graphic, exclusive, or uncensored prison content through Patreon, a paid website, and related platforms; tied new prison-incident videos to paid-member growth; stated that if public platforms restricted him, he would migrate "everything" to his own website; and published or shared CDCR AVSS/BWC footage bearing his logo or watermark.

45. FERREL publicly described his media, website, book, and channel activity as operating through an LLC structure, including statements in substance that "everything is under my LLC." Public entity records identify Torment Tactical LLC as a California limited liability company incorporated on August 1, 2022, approximately four months before FERREL's December 1, 2022, CDCR resignation, with FERREL listed as manager.

**E. Source Pathway, Source Protection, and Evasion**

46. FERREL has repeatedly stated that he receives information from inside CDCR, headquarters, or the prison system. He stated, among other things, "I have people, my little birdies inside the prison system" and that he has "sources everywhere."

47. FERREL tied those sources to official personnel, stating: "You don't think I fucking talk to OIA agents—senior fucking special agents, you idiots? You don't think I talk to people in headquarters? Who the fuck do you think is giving me the information, you, you fucking

7

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

idiots?"

48. In an Instagram reel, FERREL stated to "CDCR headquarters": "Stop trying to figure out who's giving me information, okay? Look to your left. Look to your right. Some of them are giving me information. Right. Some of them closest to you—not everybody's a fucking bitch and lame cowards."

49. FERREL described specific categories of nonpublic material being sent to him. He stated that "a little birdie drops an incident report on my lap" and "they drop a synopsis." In other content, he stated that someone "sent me all the RVRs," "all the confidential information," "the 7219," and "the incident reports," and that someone sent him paperwork consisting of a deposition legal-process document.

50. FERREL solicited internal materials. In one video he stated, "if you want to fix the department... send me the incident packet." In another, he told viewers to keep sending him the CDCR Form 837 Crime/Incident Report so he could "do you guys justice."

51. FERREL paired those solicitations with repeated assurances of source protection, including statements that he would not reveal sources, would protect people who spoke to him, that sources could use aliases or anonymous methods, that "people who talk to me—I don't throw them under the bus," and that "everything is confidential... nobody will get got."

52. FERREL also described using encrypted communications, Signal, Proton Mail, burner devices, multiple phones, and advised officers not to provide CDCR officials their real phone numbers.

53. Identified CDCR employees, self-identified CDCR employees, and staff-affiliated persons have followed, commented on, reposted, appeared on, or otherwise engaged with FERREL's accounts and materials, including interviews. In an outside interview with FERREL titled "'That Prison Guard' Hector Bravo talks about the rise in murders and violence in CDCR," the host stated that he had received text messages from persons at different prisons concerning FERREL and would not identify the prisons because he did not want those persons to get in trouble. FERREL responded that CDCR people were getting in trouble for talking to him. The interview used Plaintiff's photograph as the thumbnail with the text overlay "pure evil." Plaintiff alleges the interview was published approximately one week after Plaintiff filed civil

8

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

litigation concerning the 19CM-1882 leak or dissemination.

54. FERREL has repeatedly stated he will not stop, including after investigative attention, platform restrictions, or legal process. He also promoted CounterClash Network as a decentralized media project, referenced "future anonymous operations worldwide," and described building systems that could not be shut down. Plaintiff alleges these statements for ongoing-risk, continuation, evasion, alternate-platform, decentralization, and source-network purposes.

**F. 2023 Plaintiff-Specific Publications and Grievances**

55. Plaintiff alleges that FERREL had no CDCR, public-information, investigative, court, or case role involving Plaintiff during employment or after FERREL left CDCR.

56. Around April 7, 2023, during a pretrial, counsel-placement period in 19CM-1882, FERREL published Plaintiff-related content containing purported insider crime-scene information. In the comment section, FERREL stated that he had read Plaintiff's file "numerous times" and stated that Plaintiff had an "(S)" on his file. The "(S)" reference concerned Plaintiff's classification information. CDCR holds inmate classification as non-public information.

57. Under FERREL's Plaintiff-related video, a commenter self-identifying as a CDCR officer publicly asserted that Plaintiff was HIV-positive and made derogatory statements. Another commenter identifying as a correctional officer stated that she had entered Plaintiff's file to view or obtain 19CM-1882 photographs. FERREL replied to or engaged with both comments. Plaintiff does not allege those medical or case assertions for their truth, but alleges that the comments appeared in the same Plaintiff-specific publication environment created by FERREL.

58. Plaintiff filed grievances around May 30, 2023, concerning other staff social-media posts, and around July 2023, concerning leaked photographs. Around July 2023, FERREL posted teaser or behind-the-scenes images reflecting filming for documentary-style programming later released through Woodcut concerning Plaintiff and 19CM-1882.

**G. 2024 Paywall Publications, Media Programming, and Grievance References**

59. Around February 2024, including around the principal U.S. YouTube release window, FERREL appeared in the Woodcut or Woodcut-affiliated documentary-style programming with co-interviewee Paul Lopez. FERREL and Lopez presented themselves, or were presented, as

9

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

correctional or law-enforcement sources and conveyed familiarity with official-source information rather than ordinary public-source commentary. They presented record-like 19CM-1882 information, including cell-scene details, scene conditions, and claimed direct access to photographs or reports that Plaintiff alleges had not been officially released through ordinary public channels. FERREL also used stigmatizing characterizations of Plaintiff. Plaintiff pleads these statements not for truth or accuracy, but to show claimed access, source pathway, timing, notice, amplification, and prejudicial effect.

60. Plaintiff further alleges that Paul Lopez was Kern-based; that Lopez had direct social-media ties to Kings County District Attorney investigator Robert Waggle; that Lopez and FERREL followed each other on FERREL's main Instagram account; and that Lopez also had social-media connections to known FERREL collaborators, including former CDCR sergeant Alex Duran and former CDCR ISU employee Don Garrett. Plaintiff further alleges Garrett appeared in live broadcasts with FERREL and used his own social-media platforms to give or repeat source-protection and evasion-related advice to CDCR officers, including not giving CDCR their real phone numbers, using burner devices, and using data-hygiene or wipe-data practices. Plaintiff pleads these facts for source-pathway, common-method, access, timing, notice, evasion, and preservation-risk purposes.

61. Around April 16, 2024, Plaintiff filed a grievance concerning the officer's HIV comment posted to or under FERREL's material. Plaintiff later learned this officer was a paying member of FERREL's website. Around April 18, 2024, and May 13, 2024, FERREL posted Google notices reflecting "legal process" directed to his Google accounts. Around May 31, 2024, FERREL posted a video stating in substance that the closer CDCR got to him, the worse it would be for CDCR.

62. On or about June 6 and June 8, 2024, FERREL posted or promoted Plaintiff-specific 19CM-1882 photographs or imagery through Patreon, a paywall platform, and advertised the materials through public-facing platforms using paid-access language such as "Horrific Picture," "Extremely Graphic," "Never Before Seen," "uncensored," and "join to unlock."

63. Plaintiff alleges that FERREL promoted Plaintiff-specific 19CM-1882 photographs and case

10

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

materials before those materials were lawfully available to Plaintiff, Plaintiff's counsel, or other authorized recipients through ordinary court-controlled, CDCR-controlled, or public-records channels. FERREL did so despite a protective order and after the prosecution had recognized institutional-security concerns with release or possession of the photographs.

64. Plaintiff alleges that one full-face image FERREL promoted or displayed was taken during a strip-search, hospital, mental-health, or investigative context as part of the 19CM-1882 investigation and was not a public image or public court-record photograph.

65. In separate outside interviews concerning Plaintiff and 19CM-1882, FERREL claimed he had read reports and seen or possessed photographs while narrating 19CM-1882 in graphic terms.

66. In August and September 2024, Plaintiff filed litigation concerning CSP-Corcoran or ISU misconduct, including refusal to address 19CM-1882 file leaks through FERREL's platforms and alleged violations of *Coleman v. Newsom* orders. During that same period, FERREL gave an outside interview concerning Plaintiff and 19CM-1882 and publicly described record-like cell-scene details, including cell-window coverage, cell conditions, and actions attributed to a responding doctor.

67. Around October 2, 2024, FERREL published or promoted anti-"California Model" content using Plaintiff's image as the thumbnail, even though Plaintiff's publicly available custody status made him ineligible for that program. FERREL had also criticized the California Model or other rehabilitation programs using Plaintiff or 19CM-1882 as examples, including statements that Plaintiff could not be rehabilitated.

68. Around December 2024, FERREL referenced Plaintiff's nonpublic 602/grievance against him, stated someone had told him about it, repeated Plaintiff's allegation that FERREL's YouTube reference caused officers to retaliate against Plaintiff, mocked Plaintiff's use of the grievance process, referenced 19CM-1882 photographs, made inflammatory case commentary, and referred to Plaintiff as "convicted" despite the case remaining pending pretrial. Plaintiff alleges the grievance contents were not public court records and were not available through CPRA, FOIA, or ordinary public-records channels.

**H. 2025 Filings, KGET, Duran, Wisenuts, and Continued Amplification**

11

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

69. Around March 6, 2025, Plaintiff filed civil litigation against CSP-Corcoran, alleging staff had confiscated/destroyed Plaintiff's legal materials, refused to return legal materials, and impaired Plaintiff's ability to litigate his civil and criminal matters. March 10, 11, and 12, 2025, FERREL published "gladiator"-style fight polls and related inmate-violence content featuring Plaintiff.

70. Plaintiff pleads the following 2025 events for timing, amplification, source-pathway, case-narrative, and notice purposes, not for the truth of third-party statements.

71. In May 2025, during a death-penalty-strike motion period reflected on the Kings County Superior Court docket, FERREL interviewed former CDCR employee Alex Duran on a FERREL platform and raised Plaintiff, 19CM-1882, Corcoran 4A, staff related to the prosecution's death-penalty position, EOP or mental-health status, and cell-placement context.

72. In July 2025, approximately ten days after Plaintiff filed an emergency interlocutory appeal objecting to waiver of mental-health privilege, the Wisenuts podcast gave a public shout-out to FERREL for introducing or recommending Duran and discussed Plaintiff and 19CM-1882-themed issues contested in the interlocutory appeal.

73. In July 2025, during the same general period as Plaintiff's emergency interlocutory activity concerning mental-health privilege, Vice interviewed FERREL as a CDCR "whistleblower" and displayed imagery visually consistent with 19CM-1882 investigative material FERREL had previously offered through Patreon or other paywall posts.

74. Around August 19, 2025, the Kings County Superior Court docket reflected refusal to file Plaintiff's pro se hybrid motions concerning FERREL and KGET-17's dissemination of 19CM-1882 sealed or confidential material.

75. Around August 20, 2025, FERREL publicly posted a "shout-out" to the Kings County District Attorney for not charging him after a charge referral.

76. Around September 22, 2025, KGET-17, a Bakersfield/Kern County outlet, featured FERREL, a San Diego County resident and former CDCR lieutenant, as a CDCR commentator concerning a CDCR event, without identifying or quoting an official CDCR spokesperson in the segment.

**I. Post-Lawsuit Escalation and Service-Mail Interference**

77. After continued online amplification of Plaintiff-specific confidential, mental-health,

12

classification, grievance, and case materials, Plaintiff filed *Osuna v. Duran, et al* and began serving individual defendants.

78. Plaintiff delivered sealed summons-and-complaint mailings to correctional staff for institutional legal-mail processing to or through CDCR headquarters and external addresses for former employees, including FERREL, around February 5, 2026. The mailings were recorded in the institutional legal-mail log/Form 119.

79. On or around February 18, 2026, after service, FERREL publicly displayed on social media an envelope and summons papers associated with Plaintiff's mailing to him, including Plaintiff's return address, and referred to Plaintiff as a "motherfuck" and a "piece of shit."

80. FERREL publicly acknowledged Plaintiff's lawsuit and stated in substance that Plaintiff was suing him because FERREL made a YouTube video discussing how a case like 19CM-1882 could occur within a prison setting.

81. FERREL continued publishing image-based and promotional content concerning Plaintiff and the lawsuit, including fight-themed UFC-style graphics and posts using Plaintiff's image and likeness.

82. FERREL publicly referred to Art Guillen as his co-defendant in the lawsuit and stated: "That vato CDW Art Guillen is my co-defendant in our Osuna lawsuit. That foo better keep it solid and not break."

83. FERREL publicly replied "EXACTLY" to a viewer comment stating in substance that Plaintiff's legal mail would not have made it out of the control booth. The comment included a toilet emoji.

84. After these statements, legal mail regarding the litigation was returned opened to Plaintiff. The summonses and complaints for current CDCR-employee defendants, including Guillen, were returned opened, bore received/processing stamps, routing stickers, return-forwarding notations, or routing through CDCR channels including the CDCR Archive Unit, and did not bear "addressee unknown" markings.

85. After the earlier service-mail set was returned, Plaintiff sent later case-management and form CIV-050 mailings through institutional legal mail around March 19, 2026, including mailings

13

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

directed to FERREL. Plaintiff alleges that FERREL's later mailing, sent to the same address where he had received the summons and complaint, was also returned opened.

86. FERREL did not appear at the case-management conference or file any responsive document, including after re-service by the San Diego Sheriff.

87. Around April 24, 2026, FERREL stated: "Let me tell you what the best thing about being a correctional lieutenant for the CDCR is: I know all about due process, I know all about litigation, I know all about evidence, I know all about articulating, I know all about supporting claims."

**J. CDCR Notice, Selective Nonaction, and Legal Process**

88. Despite Plaintiff's notices, links, captures, and supporting evidence, one or more CDCR personnel, including Chief Deputy Warden Art Guillen, denied relief or refused to process proof for the reasons described above.

89. In other matters involving FERREL's post-employment dissemination of CDCR-derived materials, CDCR, ISU, OIA, or law-enforcement actors directed subpoenas, search warrants, or other legal process to FERREL's accounts, devices, property, or platforms, which FERREL publicly displayed or discussed.

90. After legal process, investigative attention, or platform restrictions, FERREL shifted to backup, alternate, related, or paid platforms and continued publishing or advertising CDCR-derived material.

91. In another Corcoran-related matter, after publicizing CDCR or ISU legal process directed at his accounts or content, FERREL posted CDCR-related material for a pending Kings County felony case with the statement: "Thank you Corcoran ISU for violating my Fourth Amendment rights... Congratulations — your incompetence just nuked your own case."

92. After investigative attention to his accounts or content, FERREL publicly targeted or exposed investigators or staff by displaying or discussing personal-identifying, family, work-location, court-record, delivery-related, or contact-related information. Plaintiff pleads this for intent, intimidation, anti-cooperation, preservation risk, and source-protection purposes, not as a separate claim for damages on behalf of nonparties.

14

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

93. FERREL also used anti-cooperation rhetoric while assuring sources that he would protect their identities, and publicly described refusing an interview requested by an OIA Special Agent who identified him as a witness in an administrative investigation involving a CDCR employee.

**K. Asset-Transfer, Divorce, Legal-Process, and Relief-Defendant Allegations**

94. FERREL had prior notice and experience with inmate civil-rights litigation before Plaintiff's claims. Plaintiff pleads that fact only for litigation awareness, notice, and comparison to FERREL's later treatment of Plaintiff's lawsuit, not to prove the truth of allegations in other cases.

95. FERREL had publicly mocked or not discussed prior inmate claims, but after receiving or learning of Plaintiff's lawsuit, FERREL publicly displayed or discussed the lawsuit and made the statements alleged above, including statements that Plaintiff was going to "get paid" and that "the state's gonna pay him."

96. During the same broader period, FERREL publicly displayed or described legal process directed to his accounts, devices, records, communications, or platforms.

97. Around those legal-process events, FERREL made shifting public statements about being separated, divorced, getting divorced, or still legally married. Around October 11, 2025, he displayed materials he described as an OIA search warrant and a "Dissolution Judgment Packet" from the San Diego Superior Court. The San Diego Superior Court register presently available to Plaintiff reflects a later dissolution action, *Ferrel v. Ferrel*, case no. 26FL002233S, filed by FERREL on February 27, 2026—about nine days after FERREL displayed the *Osuna v. Duran, et al* lawsuit—with later property and income-and-expense filings.

98. FERREL publicly stated that CHRISTINA FERREL gave him Plaintiff's lawsuit papers after stating in substance that the papers were "not good." Plaintiff alleges this for CHRISTINA FERREL's notice, knowledge, and preservation-risk purposes. Plaintiff has preserved screen captures showing an account-level connection between CHRISTINA FERREL's private social-media account and a person in FERREL's alleged source-protection or evasion network, which Plaintiff pleads only for notice, relationship, discovery, preservation-risk, and potential good-faith-transferee issues. FERREL also made shifting financial statements after

15

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

service that he was broke, had no money, or that his wife had taken everything, while elsewhere stating in substance that he had a house worth approximately $1.2 million, house equity, retirement interests, mortgage obligations, assets tied up in divorce, and limited ability to sell the house, access retirement, make financial decisions, or access assets.

**L. Pattern Evidence, Source Pathways, and Proxy Amplification** [2]

99. Plaintiff does not allege joint action merely because FERREL is a former CDCR employee, criticized Plaintiff, published prison commentary, or associated with other commentators. Plaintiff alleges joint action based on source-pathway facts, including solicitation of official-access materials, source-protection statements, statements showing receipt or use of nonpublic materials, monetization of record-derived content, CDCR notice, and alleged post-notice supply, facilitation, ratification, or selective nonintervention by CDCR-affiliated actors. Similar timing and source-pathway examples in other inmate or estate matters are pleaded only for notice, motive, pattern, common method, ratification, preservation, and prospective-relief purposes, not to seek damages for nonparties.

**M. Harm to Plaintiff**

100. As a result of the conduct alleged above, Plaintiff suffered increased custodial risk, threats, harassment, reputational injury within custody, humiliation, emotional distress with physical manifestations, including sleep disruption, anxiety symptoms, headaches, gastrointestinal distress, or other stress-related physical symptoms, and objective deterrent harm. Plaintiff pleads the service-mail events for timing, notice, source-pathway, coordination, motive, intimidation, chilling context, and joint-action evidence, not as a separate unexhausted damages claim.

**VI. CLAIMS FOR RELIEF**

**COUNT ONE: First Amendment Retaliation— Joint Action with State Actors**

**Against FERREL and DOES 1-25**

101. Plaintiff engaged in protected First Amendment activity by filing grievances, complaints, court

---

[2] **See Exhibit B** for examples of inmate or estate cases showing critical court or protected-activity dates alongside FERREL's publication dates for related case materials and/or narratives. **See also Exhibit C** for examples of FERREL publishing CDCR-related news or materials before corresponding official CDCR releases.

16

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

motions, petitions, civil-rights litigation, service papers, and complaints/reports concerning unauthorized disclosure, media interference, confidentiality violations, legal access, safety risks, and staff misconduct.

102. FERREL and one or more DOES 1–25 knew of Plaintiff's protected activity through grievances, complaints, service materials, litigation filings, institutional records, mail-processing records, grievance responses, public discussion of Plaintiff's lawsuit, public references to Plaintiff's 602 activity, and Plaintiff-specific filings identifying FERREL's alleged dissemination and monetization of 19CM-1882 materials.

103. One or more DOE Defendants took adverse action by affirmatively supplying, transmitting, routing, facilitating, enabling, ratifying, or selectively refusing to stop dissemination of Plaintiff Materials after notice; refusing to process proof; selectively failing to enforce confidentiality, breach-response, audit, and records safeguards.

104. FERREL, acting jointly with DOE state actors and willfully participating in the same retaliatory course of conduct, took adverse action by escalating Plaintiff-specific publication, ridicule, inflammatory narratives, and monetization after protected activity; publicly mocking Plaintiff's grievances and lawsuit; describing nonpublic grievance contents, including Plaintiff's allegation that "the officers are now retaliating against him"; protecting sources; discouraging cooperation; and promoting or advertising Plaintiff-specific materials through public or paid platforms.

105. The adverse actions would chill a person of ordinary firmness from continuing to grieve, litigate, serve defendants, report misconduct, submit evidence, seek protection, or challenge unauthorized disclosures. Plaintiff's protected activity was a substantial or motivating factor, as shown by chronology, direct references to Plaintiff's protected activity, and close timing between Plaintiff's protected activity and later Plaintiff-specific publication, monetization, ridicule.

106. The adverse actions did not reasonably advance a legitimate correctional goal. FERREL acted under color of law through joint action with DOE state actors, and Plaintiff suffered more-than-minimal harms, including custodial-safety risk, objective deterrent harm, confidentiality

17

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

harm, reputational injury within custody, humiliation, emotional distress, and physical stress symptoms.

**COUNT TWO: 42 U.S.C. § 1983 Conspiracy Joint Action Under Color of State Law**

Against FERREL and DOES 1-25

107. FERREL and one or more DOE state actors acted under color of state law because FERREL was a willful participant in joint action with current CDCR/CCHCS personnel, and because one or more DOE state actors used official-access pathways, authority, systems, records, or duties to obtain, transmit, conceal, ratify, facilitate access to, or selectively fail to stop dissemination of Plaintiff Materials outside authorized channels.

108. The facts alleged above support a reasonable inference that FERREL and one or more DOE state actors reached an express or tacit understanding, or meeting of the minds, to use Plaintiff Materials and CDCR/CCHCS-controlled information against Plaintiff in connection with Plaintiff's grievances, litigation, service efforts, complaints about unauthorized disclosures, and 19CM-1882 proceedings. Each participant need not have known every detail, but each shared the common objective of obtaining, disseminating, amplifying, concealing the source of, monetizing, or enabling continued use of Plaintiff Materials outside authorized channels.

109. Overt acts by DOE state actors included accessing, copying, photographing, summarizing, transmitting, facilitating access to, concealing, deliberately failing to safeguard after actual notice, ratifying, selectively refusing to stop dissemination of Plaintiff Materials. Overt acts by FERREL included soliciting, receiving, publishing, promoting, monetizing, branding, reposting, directing viewers to paid, public, alternate, or secure platforms, referencing Plaintiff's nonpublic grievance contents, protecting sources and discouraging cooperation as alleged above, amplifying stigmatizing, guilt-implying, inflammatory, or prejudicial Plaintiff-specific narratives tied to Plaintiff Materials, and continuing dissemination after notice, protected activity, legal process, or investigative attention. Plaintiff pleads the service-mail events described above as timing, notice, source-pathway, coordination, intimidation, and joint-action evidence.

110. The joint action and conspiracy caused actual constitutional deprivations and more-than-

18

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

minimal harms, including retaliation for Plaintiff's protected grievances, filings, service efforts, and complaints concerning unauthorized disclosures, objective deterrent harm; amplification of stigmatizing, guilt-implying, inflammatory, or prejudicial Plaintiff-specific narratives in a custodial setting; and increased custodial danger from retaliatory use of official-access materials. The conduct would chill a person of ordinary firmness from continuing to grieve, litigate, serve defendants, report misconduct, seek protection, or challenge unauthorized disclosures.

111. The alleged conduct did not reasonably advance a legitimate correctional goal. Plaintiff alleges the challenged acts involved unauthorized access, transmission, concealment, dissemination, monetization, source protection, and selective nonintervention, rather than legitimate safety, security, discipline, investigation, classification, or authorized records-handling purposes.

112. The alleged nexus between FERREL and DOE state actors exceeds ordinary communication with government employees, media commentary, criticism of CDCR, or lawful receipt of public information. It rests on alleged official-access materials, current prison-system sources, source-protection assurances, CDCR/CCHCS-controlled records or information, publication or monetization of restricted materials, CDCR notice, post-notice facilitation or selective nonintervention, and Plaintiff-specific timing near protected activity and legal proceedings. The alleged agreement, common objective, and joint action are reasonably inferred from the facts alleged above.

**COUNT THREE: Supplemental California UVTA Claim and Equitable Remedies for Traceable Proceeds, Asset Preservation, Constructive Trust, Disgorgement, and Voidable-Transfer Relief**

Against FERREL, CHRISTINA FERREL, and DOES 26–50 (Transferees/Relief Defendants)

113. This Count is asserted under supplemental jurisdiction and seeks: (a) equitable remedies ancillary to Plaintiff's federal claims, including tracing, accounting, disgorgement, constructive trust, equitable lien, preservation, and recovery of Traceable Proceeds; and (b) California UVTA relief, provisional relief, preservation, avoidance, restraint, receivership if necessary, and related equitable relief concerning Judgment-Avoidance Assets.

19

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

114. "Traceable Proceeds" means net profits, proceeds, revenues, payment streams, accounts, assets, or identifiable economic benefits causally connected to the Challenged Conduct, including subscriber revenue, platform income, website income, payment-processor proceeds, paid-content proceeds, media or interview fees, LLC-related proceeds, audience growth, business value, brand value, or related assets obtained from or increased by the alleged acquisition, use, publication, promotion, sale, licensing, monetization, or continued dissemination of Plaintiff Materials.

115. "Judgment-Avoidance Assets" means assets, property interests, proceeds, transfers, obligations, liens, encumbrances, assignments, nominee arrangements, claimed asset divisions, payment streams, business interests, real-property interests, retirement interests, mortgage or house-equity interests, LLC interests, bank or payment-processor accounts, or other property interests—whether or not directly traceable to the Challenged Conduct—that FERREL allegedly has transferred, is transferring, has attempted or threatened to transfer, has taken steps to transfer, has concealed or threatened to conceal, has encumbered or threatened to encumber, has assigned or threatened to assign, has placed or is placing in nominee form, has placed or is placing beyond ordinary reach, has dissipated or threatened to dissipate, or has otherwise disposed of or threatened to dispose of with actual intent to hinder, delay, defraud, conceal, dissipate, or frustrate Plaintiff's recovery in this action.

116. Plaintiff does not seek § 1983 damages against CHRISTINA FERREL or DOE Transferees/Relief Defendants based on their own constitutional violations. Plaintiff names them only as alleged transferees, nominees, constructive-trust holders, asset holders, account holders, property holders, relief defendants, or persons who have received, hold, claim, control, benefit from, have been assigned, are being assigned, are alleged to be receiving, or are alleged to be intended recipients or holders of Traceable Proceeds, Judgment-Avoidance Assets, transferred assets, proceeds, or property interests subject to equitable or UVTA relief. Plaintiff will amend to identify additional transferees, nominees, asset holders, intended recipients, or relief defendants as their identities and roles are discovered.

117. As to Traceable Proceeds, Plaintiff alleges FERREL obtained or attempted to obtain money,

20

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

subscribers, platform income, website income, payment-processor proceeds, paid-access revenue, interview or media activity fees, audience growth, business value, brand value, LLC-related value, or other economic benefits from the Challenged Conduct. Plaintiff seeks disgorgement only of net profits or identifiable economic benefits causally connected to the Challenged Conduct, together with tracing, accounting, constructive trust, equitable lien, preservation, and recovery of such proceeds or their identifiable substitutes. Plaintiff does not seek an arbitrary penalty, unrelated gross revenue, or unrelated personal assets under this Traceable Proceeds theory.

118. As to Judgment-Avoidance Assets, Plaintiff asserts a California UVTA claim. Plaintiff alleges FERREL made, incurred, attempted, threatened, or is in the process of making or incurring transfers, obligations, encumbrances, assignments, nominee arrangements, claimed asset divisions, concealment, dissipation, or other dispositions of property with actual intent to hinder, delay, defraud, conceal, dissipate, or frustrate Plaintiff's recovery of damages, costs, fees, equitable relief, judgment enforcement, default judgment, sanctions, or any other lawful recovery in this action.

119. Plaintiff alleges he is a creditor or claimant for UVTA purposes because he asserts legal and equitable claims against FERREL in this action, including claims for damages, costs, fees, equitable relief, asset tracing, disgorgement, constructive-trust relief, and judgment enforcement. Plaintiff further alleges that FERREL's awareness of other pending, threatened, reasonably anticipated, defaulted, reduced-to-judgment, unpaid, or recovery-related Plaintiff claims arising from the same Plaintiff-specific publications, disclosures, source-network conduct, service-mail interference, retaliation, or asset-avoidance conduct is pleaded only for notice, intent, litigation awareness, creditor or claimant status, badge-of-fraud, preservation-risk, and related UVTA purposes. Plaintiff does not ask this Court, in this Count alone, to enter, determine the validity of, or collect a money judgment from a separate action, and nothing in this paragraph waives Plaintiff's right to enforce, register, domesticate, supplement, consolidate, or otherwise pursue any separate judgment, default, settlement, or recovery through lawful procedures in the proper court or proceeding.

21

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

120. Plaintiff alleges badges of voidable-transfer intent and preservation risk, including transfer or claimed transfer to an insider, spouse, nominee, entity, account, trust, custodian, or affiliated person; threatened, pending, reasonably anticipated, defaulted, unpaid, or reduced-to-judgment Plaintiff claims before or near the transfer or obligation; FERREL's nonappearance after service or notice; CHRISTINA FERREL's alleged delivery of Plaintiff's lawsuit papers to FERREL after stating in substance that the papers were "not good"; public statements that Plaintiff was going to "get paid" or that "the state's gonna pay him"; later statements that FERREL had no money; shifting statements concerning separation, divorce, marital status, house equity, mortgage obligations, retirement interests, asset access, and assets being tied up in divorce; the later San Diego dissolution action and property or income filings alleged above; possible retention of possession, benefit, use, control, or enjoyment despite a claimed transfer, encumbrance, divorce, asset division, or nominee placement; concealment or lack of ordinary documentation; legal process directed to accounts, records, devices, communications, or platforms; and timing shortly before or after Plaintiff's claims, service, legal process, default, judgment, nonpayment, or potential liability.

121. Judgment-Avoidance Assets include funds, proceeds, accounts, trusts, custodial accounts, minor-beneficiary accounts, nominee accounts, property interests, or other property arrangements funded, transferred, assigned, encumbered, titled, controlled, or beneficially designated for any family member, insider, trust, trustee, custodian, nominee, entity, or affiliated person, to the extent those assets are Traceable Proceeds or were structured with actual intent to hinder, delay, defraud, conceal, dissipate, or frustrate Plaintiff's recovery in this action. Plaintiff seeks relief against the transfer, asset, trustee, custodian, transferee, nominee, account holder, or person in possession, custody, or control of the asset to the extent permitted by law, and does not seek personal liability against any minor beneficiary.

122. Plaintiff alleges, in the alternative, that any transfer, obligation, assignment, encumbrance, claimed asset division, nominee arrangement, concealment, diversion, or dissipation is voidable or subject to equitable relief if FERREL did not receive reasonably equivalent value and the transfer or obligation rendered FERREL insolvent, left FERREL with unreasonably

22

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

small assets, caused or increased FERREL's inability to satisfy foreseeable claims, or impaired preservation of Traceable Proceeds, Judgment-Avoidance Assets, or assets needed to satisfy Plaintiff's claims.

123. Plaintiff seeks avoidance of any voidable transfer or obligation to the extent necessary to satisfy Plaintiff's claims; attachment or other provisional remedy where available; injunction against further disposition; receivership if necessary; preservation of records and assets; accounting; tracing; constructive trust; equitable lien; disgorgement; and other equitable relief over Traceable Proceeds, Judgment-Avoidance Assets, transferred assets, proceeds, substitutes, or property held by any transferee, nominee, or relief defendant to the extent permitted by law.

124. Plaintiff does not seek a general prejudgment freeze of unrelated assets solely to secure a possible money-damages judgment. Plaintiff seeks relief directed to Traceable Proceeds, identifiable proceeds or substitutes, voidable transfers or obligations, property transferred to or held by transferees or nominees, records necessary for tracing and preservation, and assets subject to constructive trust, equitable lien, UVTA relief, attachment, receivership, injunction, protective order, sealing or redaction protocol, filing restriction, or other provisional or equitable relief to the extent permitted by law.

125. Plaintiff does not ask this Court to adjudicate marital status, child custody, child support, spousal support, or marital-property division. Plaintiff seeks relief only to preserve, trace, recover, restrain, disgorge, avoid, attach, or impose a constructive trust or equitable lien over Traceable Proceeds, Judgment-Avoidance Assets, transferred assets, proceeds, substitutes, or property allegedly connected to the Challenged Conduct or allegedly transferred, concealed, dissipated, encumbered, assigned, placed in nominee form, or placed beyond ordinary reach to hinder, delay, defraud, conceal, dissipate, or frustrate Plaintiff's recovery.

126. Plaintiff requests that FERREL, CHRISTINA FERREL, and DOE Transferees/Relief Defendants preserve all records concerning Plaintiff Materials, the Challenged Conduct, Traceable Proceeds, Judgment-Avoidance Assets, platform or payment proceeds, LLC or business activity, source communications, asset transfers, assignments, encumbrances, liens,

23

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

obligations, nominee arrangements, trusts, custodial accounts, property interests, proceeds, substitutes, or asset-preservation issues. Plaintiff further requests preservation of records concerning the selection, review, redaction, sealing, service, production, filing, attempted filing, publication, removal, takedown, restriction, or correction of any Plaintiff Materials or related confidential records in this action or related proceedings.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment and relief as follows:

a. Compensatory damages against FERREL and DOES 1–25, jointly and severally where permitted, in the amount of $25,000,000; nominal damages of $1.00 against each Defendant found liable under Counts One or Two; and punitive damages against FERREL and each DOE 1–25 Defendant found personally liable, where permitted by law, in the amount of $5,000,000 per liable Defendant;

b. Preliminary and permanent injunctive relief, narrowly drawn, extending no further than necessary, and constituting the least intrusive means necessary, prohibiting Defendants and persons acting in active concert or participation with them who receive actual notice from obtaining, soliciting, retaining, publishing, selling, reposting, displaying, distributing, licensing, promoting, monetizing, or otherwise using Plaintiff Materials outside lawful, authorized court, CDCR/CCHCS, or public-records procedures;

c. Preservation of evidence and records concerning Plaintiff Materials, Challenged Conduct, Traceable Proceeds, Judgment-Avoidance Assets, source communications, legal mail, platform/payment/website/subscriber/LLC activity, device/storage/account data, access/audit logs, transfers, nominee arrangements, trusts, custodial or minor-beneficiary accounts, encumbrances, and related property interests;

d. After preservation, removal, takedown, disabling of access, redaction, return, clawback, sealing or restriction, protective-order and filing-protocol relief, or other appropriate relief concerning Plaintiff Materials or sensitive records publicly filed, posted, supplied, promoted, sold, monetized, previewed, stored, or controlled by Defendants, their accounts, platforms, websites, entities, payment systems, counsel, agents, representatives, or persons acting in active concert or

24

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

participation with them who receive actual notice;

e. Accounting, tracing, disgorgement of net profits or identifiable economic benefits causally connected to the Challenged Conduct, restitution where available, constructive trust, equitable lien, recovery of Traceable Proceeds or substitutes, and California UVTA/equitable relief concerning Judgment-Avoidance Assets, including avoidance of voidable transfers or obligations, attachment or other provisional relief where available, injunction against further disposition, receivership if necessary, and relief against transferees, nominees, trustees, custodians, account holders, insiders, family-member asset holders, entities, or relief defendants, including CHRISTINA FERREL and DOES 26–50, to the extent permitted by law;

f. Plaintiff does not seek in this action any order suppressing, excluding, altering, controlling, delaying, or adjudicating evidence, charges, hearings, discovery, witness issues, or proceedings in Kings County Superior Court case no. 19CM-1882;

g. Referral or notification, if warranted by the evidence, findings, or judgment, to appropriate federal authorities, including the United States Attorney, FBI, DOJ Civil Rights Division, HHS Office for Civil Rights, or other appropriate federal agency, concerning possible unlawful acquisition, disclosure, trafficking, obstruction, retaliation, intimidation, evidence destruction, privacy violations, or other federal offenses or civil violations related to Plaintiff Materials, including where state or local referral, review, or charging decisions have not resulted in criminal charges;

h. Prejudgment and postjudgment interest, taxable costs, recoverable fees, enforcement costs, and such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

DATED: May 26, 2026

p.p. Jamie Osuna

25

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
